UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. M. MILLER BAKER, JUDGE

| | | |
|---|---|---|
| JBF BAHRAIN W.L.L., | : | |
| as successor-in-interest to | : | |
| JBF Bahrain S.P.C. | : | |
| | : | |
| Plaintiff, | : | |
| | : | Court No. 23-00067 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Lawrence M. Friedman
Pietro N. Bianchi
Barnes, Richardson & Colburn LLP
303 East Wacker Drive
Suite 305
Chicago, IL 60601
O: 312 297-9554
M: 847 331-5797
lfriedman@barnesrichardson.com

# Table of Contents

I.    Description of the Merchandise ........................................................ 3

II.   Relevant Tariff Items ...................................................................... 4

III.  Questions Presented ........................................................................ 5

IV.   Statement of Facts .......................................................................... 6

V.    Summary of Argument...................................................................... 6

VI.   Jurisdiction.................................................................................... 7

VII.  Standard of Review ........................................................................ 8

VIII. Argument...................................................................................... 9

    A. The USBFTA Incorporates the Part 102 Specific Rules For
       Making Origin Determinations under USBFTA Article 4.1(b).. 9

    B. Customs  Improperly  Applied  the  Double  Substantial
       Transformation Test To Exclude The Value of Foreign Materials
       From The 35 Percent Value-Added Threshold ........................ 18

    C. Customs Incorrectly Applied 19 C.F.R. § 102 When it Failed to
       Treat the Amorphous PET Film as a Domestic Material......... 21

IX.   Conclusion .................................................................................... 23

# Table of Authorities

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................ 9

*Bestfoods v. United States*, 165 F.3d 1371 (Fed. Cir. 1999) ................... 16

*Boddie v. Department of Navy*, 827 F.2d 1578 (Fed. Cir. 1987)............. 17

*Cal. Indus. Prods. v. US*, 436 F.3d 1341 (Fed. Cir. 2006) ...................... 12

*CPC Int'l, Inc. v. United States*, 933 F. Supp. 1093 (Ct. Int'l Trade 1996) ................................................................................................................. 16

*Eckstrom Industries v. United States*, 27 F. Supp. 2d 217 (1998).......... 17

*Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118 (2d Cir. 2020) ................................................................................................ 17

*Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988) ........................... 12

*Marbury v. Madison*, 5 U.S. 137 (1803) ..................................................... 8

*OCP S.A. v. United States*, No. 1:21-cv-00219, 2025 Ct. Intl. Trade LEXIS 32 (Ct. Int'l Trade Mar. 27, 2025) ...................................................... 17

*Torrington Co. v. United States*, 764 F. 2d 1563 (1985) ......................... 15

*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)....... 17

*Universal Elecs. v. United States*, 112 F.3d 488 (Fed. Cir. 1997) ........... 8

*Wirtgen Am., Inc. v. United States*, 447 F. Supp. 3d 1359 (Ct. Int'l Trade 2020) ....................................................................................................... 9

## Statutes

19 U.S.C. § 1514(c)(3)................................................................................... 7

19 U.S.C. § 3805 ......................................................................................... 11

19 U.S.C. § 3805 note, § 103(a)(1) ........................................................... 11

28 U.S.C. § 1581(a) ...................................................................................... 7

28 U.S.C. § 2636(a) ...................................................................................... 7

28 U.S.C. § 2639(a)(1).................................................................................. 8

28 U.S.C. § 2640(a) ...................................................................................... 8

28 U.S.C. § 2640(a)(1).................................................................................. 8

Harmonized Tariff Schedule of the United States, 19 U.S.C. § 1202, USITC Publication 3833 (Rev. 1) .......................................................... 11

Harmonized Tariff Schedule of the United States, 19 U.S.C. § 1202, USITC Publication 4513 (27th ed. 2015) ......................................... 4, 5

HTSUS, Gen. Note 30(c)(i)(A) (2015) ...................................................... 20

**Rules**

USCIT R. 56(a) ..................................................................................... 9

**Treatises**

United States–Bahrain Free Trade Agreement, art. 4.1(b), Sep. 14, 2004, available at https://ustr.gov/trade-agreements/free-trade-agreements/bahrain-fta/final-text.......................................................... 10

United States–Bahrain Free Trade Agreement, art. 4.5(1)(a), Sep. 14, 2004, available at https://ustr.gov/trade-agreements/free-trade-agreements/bahrain-fta/final-text.......................................................... 20

United States-Bahrain Free Trade Agreement, Sep. 14, 2004, available at https://ustr.gov/trade-agreements/free-trade-agreements/bahrain-fta/final-text...................................................................................... 1, 11

**Regulations**

19 C.F.R. § 10.809(h) (2015)................................................................ 13

19 C.F.R. § 10.809(i) (2015)................................................................ 14

19 C.F.R. § 10.810(a)(2) (2015)........................................................... 13

19 C.F.R. § 10.810(b) (2015)............................................................... 13

19 C.F.R. § 10.813(a)(1) (2015)........................................................... 20

19 C.F.R. § 102 (2008) ...................................................................... 13

19 C.F.R. § 102.11(a) (2015) .............................................................. 15

19 C.F.R. § 102.11(a)(2) (2015)........................................................... 22

19 C.F.R. § 102.11(a)(3) (2015)........................................................... 19

19 C.F.R. § 102.20 (2015) .............................................................. 19, 20

19 C.F.R. pt. 10, subpt. N (2008)......................................................... 13

**Administrative Materials**

HQ H290625 (Jun. 7, 2022)........................................................... passim

*Notice of Intention to Enter Into a Free Trade Agreement With Bahrain*, 69 Fed. Reg. 34045 (Jun. 18, 2004) ...................................................... 9

NY J89249 (Oct. 7, 2003) .............................................................. 5, 20

*Rules of Origin Applicable to Imported Merchandise*, 59 Fed. Reg. 141 (Jan. 3, 1994) ................................................................................. 16

*United States & Bahrain Sign Free Trade Agreement*, Office of the U.S. Trade Representative (Sep. 14, 2004), available at *https://ustr.gov/archive/Document_Library/Press_Releases/2004/September/United_States_Bahrain_Sign_Free_Trade_Agreement.html.* ...................................................................................................... 9

*United States-Bahrain Free Trade Agreement*, 72 Fed. Reg. 58511 (Oct. 16, 2007) ........................................................................ 12, 16

*United States-Bahrain Free Trade Agreement*, 73 Fed. Reg. 42679 (Jul. 23, 2008) ......................................................................... 13, 15

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. M. MILLER BAKER, JUDGE
_____

| | |
|---|---|
| JBF BAHRAIN W.L.L., | : |
| as successor-in-interest to | : |
| JBF Bahrain S.P.C. | : |
| | : |
| Plaintiff, | : |
| | :    Court No. 23-00067 |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |
| _____ | : |

## **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of this Court, Plaintiff, JBF

BAHRAIN W.L.L. ("Plaintiff," "JBF Bahrain," or "JBF"), of the

Kingdom of Bahrain, respectfully moves this Court to enter partial

summary judgment in its favor regarding the rule of origin applicable

under the 2004 United States-Bahrain Free Trade Agreement

("USBFTA") to JBF Bahrain's entry of biaxially oriented polyethylene

terephthalate ("PET") film.

Plaintiff is asking the Court to enter a partial judgment finding,

as a matter of law, that Customs and Border Protection erred when it

required a double substantial transformation of non-originating material for its value to be included toward the 35% value-added content requirement applicable under Article 4.1(b) of the USBFTA. Customs also erred in its application of the "Specific Rules" of origin contained in 19 C.F.R. Part 102 to determine whether the imported merchandise is a "material produced in Bahrain."

Plaintiff has a good-faith belief that the Court's judgment on this question of law may result in the resolution of this case through stipulation or other mechanism. At a minimum, addressing the question of law at this stage will focus any further proceedings on relevant questions of fact and on the application of the law as determined by this Court to the facts. To avoid wasteful additional discovery and facilitate a robust response and reply to this motion, Plaintiff is simultaneously submitting a consent motion to stay the current scheduling order while this motion is pending.

# I.    Description of the Merchandise

This motion is not asking the Court to make any findings of fact. Plaintiff is providing descriptions of the merchandise, production process, and circumstances of the importation for context.

JBF Bahrain produces biaxially oriented PET film at its facility in Bahrain.[1] As an intermediate step in the production of the imported biaxially oriented PET film, plaintiff produced amorphous PET film by extruding melted PET chips. HQ H290625, 2 (Jun.7, 2022). Biaxially oriented PET film is used in flexible packaging, protective coverings, insulation, electronic, and acoustic applications.

JBF Bahrain shipped the biaxially oriented PET film from Bahrain to the United States under U.S. Customs Entry WF5-0702355-5 ("Entry"). ECF No. 14-1, 70. The biaxially oriented PET film was entered into the U.S. on January 17, 2015. *Id.*

---

[1] In HQ H290625, 2 (Jun. 7, 2022), Customs acknowledged that "[t]he importer manufactured the PET film in Bahrain."

## II.    Relevant Tariff Items

The tariff classification of the merchandise does not appear to be in dispute. For context, Customs liquidated the subject entry of JBF Bahrain's biaxially oriented PET film in Harmonized Tariff Schedule of the United States ("HTSUS") 3920.62.0090, which covers:

> Other plates, sheets, film, foil and strip, of plastics, noncellular and not reinforced, laminated, supported or similarly combined with other materials:
>> Of polycarbonates, alkyd resins, polyallyl esters or other polyesters:
>>> Of poly(ethylene terephthalate):
>>>> Other . . . 4.2%

Customs confirmed this classification in Customs Ruling HQ H290625 (Jun. 7, 2022).

In HQ H290625, Customs determined that the PET chips used in the production of the amorphous film are classified in HTSUS 3907.60.0070, which covers:

> Polyacetals, other polyethers and epoxide resins, in primary forms; polycarbonates, alkyd resins, polyallyl esters and other polyesters, in primary forms:
>> Poly(ethylene terephthalate):
>>> Other. . . 6.5%

The non-oriented or amorphous PET film JBF produces from PET chips as an intermediate and necessary step in the production of

biaxially oriented PET film is classified in the HTSUS 3920.62.0090.

HQ H290625 ("PET film is properly classified under subheading

3920.62.0090"); NY J89249 (Oct. 7, 2003) (amorphous PET film is

classified in 3920.62.0090).

Unless specified, all references to the HTSUS in this motion refer

to the HTSUS, 19 U.S.C. § 1202, USITC Publication 4513 (27th ed.

2015). JBF Bahrain agrees that biaxially oriented and amorphous PET

films are properly classified in HTSUS 3920.62.0090 and that the PET

chips are properly classified in HTSUS 3907.60.0070.


### III.   Questions Presented

1.    Whether under Article 4.1(b) of the USBFTA, the value of

the amorphous PET film JBF produced in Bahrain from PET chips

imported from outside of Bahrain and the United States counts toward

the 35% Bahraini value-added required for the imported biaxially

oriented PET film to originate under the Agreement. Plaintiff contends

the text of the Agreement along with the implementing statutes and

regulations confirm the value of the amorphous PET film counts.

Defendant incorrectly reads the law to require that the PET chips

undergo a double substantial transformation before the value of the chips, and therefore of the amorphous PET film, can count toward the 35% value-added requirement.

2.    Whether Customs incorrectly applied the Rules of Origin in 19 C.F.R. Part 102 by failing to recognize that the amorphous PET film is a "domestic material" of Bahrain and, therefore, that the biaxially oriented PET film is produced in Bahrain exclusively from domestic materials.

## IV.   Statement of Facts

At this stage, Plaintiff is not asking the Court to make any findings of fact. Pursuant to Rule 56.3 of the Rules of the Court of International Trade, attached hereto is a statement of material facts referenced in this motion as to which Plaintiff contends there is no genuine issue to be tried.

## V.   Summary of Argument

Customs & Border Protection should have applied the Part 102 rules, rather than substantial transformation, when determining

whether amorphous PET file is a material produced in the territory of Bahrain and when determining whether a good is new and different article of commerce. With respect to materials that count toward the 35% value-added requirement, the USBFTA does not require that foreign materials undergo a double substantial transformation. With respect to the finished good, the USBFTA does not require that a material produced in the territory of Bahrain and used in the production of the finished good undergo any tariff shift for the finished good to be a new and different article of commerce.

## VI.  Jurisdiction

The Court of International Trade has exclusive jurisdiction to review denied protests pursuant to 28 U.S.C. § 1581(a). The entry date for JBF Bahrain's biaxially oriented PET film was January 27, 2015. Entry, ECF No. 14-1, 70. Customs liquidated the entry on June 17, 2016. Protest 1601-16-100269, ECF No. 14-1 at 4. On December 8, 2016, JBF Bahrain timely protested the liquidation. *Id.*; 19 U.S.C. § 1514(c)(3). CBP denied the protest on September 19, 2022. ECF No. 14-1 at 1. Plaintiff timely filed the summons in this Court on March 16,

2023. ECF No. 1. 28; U.S.C. § 2636(a). Since the action was timely

brought, jurisdiction is correct. All liquidated duties, taxes, and fees

have been paid.

## VII.  Standard of Review

The Court of International Trade reviews denied protests on the

record made before the court. 28 U.S.C. § 2640(a)(1). The Court reviews

questions of law *de novo*. 28 U.S.C. § 2640(a)(1). The presumption of

correctness granted to Customs by 28 U.S.C. § 2639(a)(1) does not apply

in situations where only a legal dispute exists. *Universal Elecs. v.*

*United States*, 112 F.3d 488, 492 (Fed. Cir. 1997) ("the presumption

carries no force as to questions of law"). Related to this concept, "the

importer has no duty to produce evidence as to what the law means

because evidence is irrelevant to that legal inquiry." *Id.* (emphasis in

original). The Court makes final decisions on questions of law, such as

the meaning of the statute. *Id.* ("[i]t is emphatically the province and

duty of the judicial department to say what the law is."), (*quoting*

*Marbury v. Madison*, 5 U.S. 137, 177 (1803)).

Summary judgment, including partial summary judgment, is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law." *Wirtgen Am., Inc. v. United States*, 447 F. Supp. 3d 1359, 1370 (Ct. Int'l Trade 2020), (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## VIII. Argument

### A. The USBFTA Incorporates the Part 102 Specific Rules For Making Origin Determinations under USBFTA Article 4.1(b)

On January 26, 2004, the U.S. and Bahrain launched bilateral negotiations in Manama, Bahrain, reaching an agreement in May. *United States & Bahrain Sign Free Trade Agreement*, Office of the U.S. Trade Representative (Sep. 14, 2004). On June 15, 2004, President Bush notified Congress of his intention to enter into a free trade agreement with Bahrain. *Notice of Intention to Enter Into a Free Trade Agreement With Bahrain*, 69 Fed. Reg. 34045 (Jun. 18, 2004).

The USBFTA rules of origin are in Article 4 of the Agreement. The rule relevant to the biaxially oriented PET film is Article 4.1(b) requires that:

- The good be **a new or different article of commerce**;
- That has been grown, produced, or manufactured in the territory of one or both of the Parties; and
- The sum of (i) the value of **materials produced in the territory of one or both of the Parties**, plus (ii) the direct costs of processing operations performed in the territory of one or both of the Parties is not less than 35 percent of the appraised value of the good at the time it is imported into the territory of a Party.

*USBFTA*, art. 4.1(b) (Exhibit 1). In addition, the finished goods must be imported directly from the territory of one party to the other party.

The term "double substantial transformation" does not appear anywhere in the final text of the USBFTA nor in the implementing regulations. That is consistent with the fact that on September 14, 2004, the U.S. and the Kingdom of Bahrain entered into a "Side Letter on Tariff Classification." The Side Letter states:

> For purposes of determining whether a good is a "new or different article of commerce that has been grown, produced, or manufactured" for the purposes of Article 4.1(b) of the Agreement, each Party should be guided by the specific rules in tariff classification set forth in section 102.20 of the United States Customs Regulations (19 CFR 102.20) (the "Specific Rules"), as may be amended.

The text of the Side Letter (Exhibit 2) was incorporated into final text of the USBFTA as an attachment to Article 4 and is part of the Agreement. *See Final Text*, *Bahrain FTA*, Office of the U.S. Trade Representative (Sep. 14, 2004) (USTR website showing the Side Letter as part of Article 4) (Exhibit 3).

The USBFTA Implementation Act was enacted on January 11, 2006, one year and four months after the Side Letter. United States-Bahrain Free Trade Agreement Implementation Act, Pub. L. 109-169 (Jan. 11, 2006)(published as Note to 19 U.S.C. § 3805). The requirements for USBFTA duty preference are incorporated into the HTSUS as General Note 30.

Section 103(a)(1) of the Implementation Act states that after the enactment of the statute:

> (A)    the President may proclaim such actions, and
> (B)    other appropriate officers of the United States Government may issue such regulations, as may be necessary to ensure that any provision of this Act, or amendment made by this Act, that takes effect on the date on which the Agreement enters into force [*i.e.*, Aug. 1, 2006] is appropriately implemented on such date, but no such proclamation or regulation may have an effective date earlier than the date on which the Agreement enters into force.

19 U.S.C. § 3805 note, § 103(a)(1). Congress was aware of the terms of

the Side Letter on Tariff Classification when it directed appropriate

officers of the United States Government to proclaim regulations

implementing the USBFTA. *See Cal. Indus. Prods. v. US*, 436 F.3d

1341, 1354 (Fed. Cir. 2006) ("Congress is presumed to be aware of

pertinent existing law"), (*citing Goodyear Atomic Corp. v. Miller*, 486

U.S. 174, 184-85 (1988) ("We generally presume that Congress is

knowledgeable about existing law pertinent to the legislation it

enacts.")). Since Congress directed Customs to proclaim regulations to

implement the USBFTA, Congress intended for Customs to implement

the rules of origin, including the Side Letter on Tariff Classification.

On October 16, 2007, the Department of Homeland Security,

Customs and Border Protection, and the Department of the Treasury

published interim regulations implementing the USBFTA. *United

States-Bahrain Free Trade Agreement*, 72 Fed. Reg. 58511 (Oct. 16,

2007). Customs announced its intent to incorporate the terms of the

Side Letter on Tariff Classification into the implementing regulations

when soliciting comments on the interim rules:

> CBP notes that, pursuant to letters of understanding
> exchanged between the Parties on September 14, 2004, in

12

> determining whether a good meets the definition of a "new
> or different article of commerce" in paragraph (i) of § 10.809,
> the United States should be guided by the provisions of Part
> 102 of the CBP regulations (19 CFR Part 102).

72 Fed. Reg. 58511. On July 23, 2008, the interim regulations

incorporating the terms of the Side Letter on Tariff Classification were

adopted as the final rule in the new 19 C.F.R. Part 10, Subpart N (2008)

and amended 19 C.F.R. § 102 (2008) as appropriate. *United States-*

*Bahrain Free Trade Agreement*, 73 Fed. Reg. 42679 (Jul. 23, 2008).

Consistent with the Article 4.1 of the Agreement, the regulations

provide that to be originating under the Agreement a good must be:

> a **new or different article of commerce**, as defined in §
> 10.809(i) of this subpart, that has been grown, produced, or
> manufactured in the territory of one or both of the Parties, is
> provided for in a heading or subheading of the HTSUS that
> is not covered by the product-specific rules set forth in
> General Note 30(h), HTSUS, and meets the value-content
> requirement specified in paragraph (b) of this section
> . . .

19 C.F.R. § 10.810(a)(2) (2015)(emphasis added). Paragraph (b) further

requires that:

> the sum of the value of **materials produced in one or both of**
> **the Parties**, plus the direct costs of processing operations
> performed in one or both of the Parties, is not less than 35 percent
> of the appraised value of the good at the time the good is entered
> into the territory of the United States.

19 C.F.R. § 10.810(b) (emphasis added). This is consistent with the Article 4.1 of the Agreement and with HTSUS General Note 30.

"Material produced in the territory of one of both of the Parties" is defined in relevant part in 19 C.F.R. § 10.809(h) "a good that is . . . a new or different article of commerce that has been grown, produced, or manufactured in the territory of one or both of the Parties." By defining "material produced in the territory of one or both of the parties" as "a good" produced in a Party, the regulations require that the origin of materials be determined consistent with the origin of goods under the Side Letter.

A "new and different article of commerce" is defined at 19 C.F.R. § 10.809(i) as existing "when the country of origin of a good which is produced in a Party from foreign materials is determined to be that country under the provisions of §§ 102.1 through 102.21 of this chapter . . . ." By adopting this definition, CBP gave regulatory meaning to the Side Letter and fully incorporated the Part 102 Specific Rules into the determination of when foreign materials are to be counted toward the 35% value-added requirement.

As a confirming step, CBP amended the Part 102 Specific Rules to state explicitly that "102.1 through 102.21 of this part will also apply for purposes of determining whether an imported good is **a new or different article of commerce** under. . . the United States-Bahrain Free Trade Agreement regulations." 73 Fed. Reg. 42679 (emphasis added).

The country of origin of a good under 19 C.F.R. § 102 rules of origin is the country in which:

(1) The good is wholly obtained or produced;
(2) The good is produced exclusively from domestic materials; or
(3) Each foreign material incorporated in that good undergoes an applicable change in tariff classification set out in § 102.20 and satisfies any other applicable requirements of that section, and all other applicable requirements of these rules are satisfied.

19 C.F.R. § 102.11(a) (2015).

The United States was aware of the double substantial transformation standard when proclaiming the USBFTA implementation regulations. The double substantial transformation rule, which is applicable to the determination of whether merchandise qualifies for preferential treatment under the Generalized System of Preferences ("GSP"), was first articulated in *Torrington Co. v. United*

*States*, 596 F.Supp. 1083, 1885-86 (CIT 1984), *aff'd,* 764 F. 2d 1563 (Fed.Cir.1985) ("Although not explicit, the dual requirement can be gleaned from the statute.").

Rather than implement a GSP-style double substantial transformation test, the USBFTA relies upon the Part 102 tariff-shifts to determine whether materials have been "produced in the territory of one of one or both of the parties." These rules, developed alongside the North American Free Trade Agreement rules of origin, were intended as an alternative to the substantial transformation test to bring simplicity and clarity to origin determinations. *CPC Int'l, Inc. v. United States*, 933 F. Supp. 1093 (Ct. Int'l Trade 1996) (The tariff shift rules provide "greater specificity, more objectivity, transparency, and predictability in origin determinations."), (*quoting Rules of Origin Applicable to Imported Merchandise*, 59 Fed. Reg. 141, 142 (Jan. 3, 1994)); *See Bestfoods v. United States*, 165 F.3d 1371 (Fed. Cir. 1999) (Reversing in part, vacating in part, and remanding *CPC Int'l*). With an understanding of the differences between these rules, the United States incorporated the Side Letter on Tariff Classification into the

implementation regulations. *United States-Bahrain Free Trade Agreement,* 72 Fed. Reg. 58511.

Given the text of the Agreement, the implementing regulations, and HTSUS Note 30(b), Customs must make USBFTA origin determinations under the Part 102 Specific Rules, regardless of any differences in outcome. *Boddie v. Department of Navy*, 827 F.2d 1578, 1580 (Fed. Cir. 1987) (Employing agencies are required to abide by their own regulations.); *Eckstrom Industries v. United States*, 27 F. Supp. 2d 217, 222 (Ct. Int'l Trade 1998) ("Commerce must make its scope determination in accordance with" its regulations.).

Customs must follow the law and its regulations. *OCP S.A. v. United States*, Slip Op. 25-32, 11, 2025 Ct. Intl. Trade LEXIS 32 (Ct. Int'l Trade Mar. 27, 2025) ("Agencies must follow the law and their own regulations."), (*citing Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) ("Under deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations."); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268, 74 S. Ct. 499, 98 L. Ed. 681 (1954)). Accordingly, this Court

should find that the Part 102 Specific Rules control when determining whether goods and the materials used in the production of those goods are new and different articles of commerce under USBFTA Article 4.1(b).

>    B. *Customs Improperly Applied the Double Substantial Transformation Test To Exclude The Value of Foreign Materials From The 35 Percent Value-Added Threshold*

Despite all the available guidance, CBP determined that PET chips must undergo a double substantial transformation for their value to count towards the 35% Bahraini value-added threshold. In HQ H290625, CBP detailed its decision as:

>    If an article is produced from materials which are imported into Bahrain, as here, the cost or value of those imported materials may be counted toward the 35 percent value content requirement only if they undergo a double substantial transformation in Bahrain. Thus, the Super Bright and Silica Chips imported from India must be substantially transformed into a new and different article of commerce (i.e., the dry resin material), which is then substantially transformed into a new or different article of commerce, the PET film. The intermediate article itself must be an article of commerce that is "commercially recognizable as a different article, i.e., it must be a 'new and different article' readily susceptible of trade and be an item that persons might well wish to buy and acquire for their own purposes of consumption or production." *Torrington Co. v. United States*, 764 F.2d 1563, 1570 (Fed. Cir. 1985).

A "new or different article of commerce" exists when a good "has been substantially transformed from a good or material that is not wholly the growth, product, or manufacture of one of both of the Parties; and has a new name, character, or use distinct from the good or material from which it was transformed." See GN 30(d)(iv)(D); Article 4.2 of the UBFTA. A substantial transformation occurs when an article emerges from a manufacturing process with a name, character or use which differs from those of the original material subjected to the process. *United States v. Gibson-Thomsen Co., Inc.*, 27 C.C.P.A. 267 (1940); *Nat'l Juice Prods Assoc. v. United States*, 10 CIT 48, 61 (1986).

The detailed analysis of the rules of origin above shows CBP applied the wrong test. For purposes of the 35% value-added test, the PET chips or any other imported material need not undergo a double substantial transformation under the *Gibson-Thomsen* test. Rather, the value of non-originating materials counts toward the 35% Bahraini value-added content requirement once they are processed in Bahrain in a manner that results in a "material produced in" Bahrain under the applicable change in tariff classification. 19 C.F.R. § 102.11(a)(3).

For HTSUS subheadings 3920.10 through 3921.90, the tariff shift regulations require "[a] change to any other good of subheading 3920.10 through 3921.90 from any other subheading, including another subheading within that group." 19 C.F.R. § 102.20. The amorphous PET film JBF produced in Bahrain from foreign PET chips is a material

produced in Bahrain as defined by § 10.809(h) and a new and different article of commerce under § 10.809(i) guided by 19 C.F.R. § 102 because the non-originating materials undergo this applicable tariff-shift when converted from PET chips of Subheading 3907.60 to amorphous PET film of Subheading 3920.62. 19 C.F.R. § 102.20. *See* NY J89249 (Amorphous PET film is classified in 3920.62.0090).

CBP should have analyzed the intermediary amorphous PET film under the Specific Rules to determine whether it is a material produced in Bahrain (which it is) and whether its value counts toward the 35% Bahraini value-added threshold (which it does). That value includes the amount Plaintiff paid for the imported PET chips. 19 C.F.R. § 10.813(a)(1) (The 35% value-added content requirement includes the "price actually paid or payable for the material by the producer of the good."); *USBFTA*, art. 4.5(1)(a); HTSUS, Gen. Note 30 (c)(i)(A).

If this understanding of the rules of origin is correct, as Plaintiff has demonstrated, the Court should find as a matter of law that CBP erred when it declined to count the value of the PET chips that JBF Bahrain converted into amorphous PET film — a "material produced in Bahrain" — toward the 35% Bahraini value-added requirement.

*C. Customs Incorrectly Applied 19 C.F.R. § 102 When it Failed to Treat the Amorphous PET Film as a Domestic Material*

JBF Bahrain's biaxially oriented PET film is new and different article of commerce as defined by 19 C.F.R. § 102 and therefore, a new and different article of commerce under USBFTA Article 4.1(b). According to Customs in HQ H290625,

> Since each of the raw materials used in the production of PET Film undergo a change to a good of subheading 3920.62 from subheading 3907.60, the applicable tariff shift rule is satisfied. Thus, the PET film is a "new or different article of commerce that has been grown, produced or manufactured in the territory of Bahrain" for determining whether it is a "product of" Bahrain under the UBFTA.

Plaintiff agrees with this analysis with respect to the finished good. However, it also applies to the intermediate amorphous film, which like the biaxially oriented PET film, is also classified in subheading 3920.62.

As a result, for purposes of the Part 102 rules, the amorphous film is a "domestic material" produced in Bahrain, where the finished good is produced. *See* 19 C.F.R. § 102.1(d). The rule in 19 C.F.R. § 102.11 (a)(3) requires that "foreign materials incorporated in the good" undergo the specified change in tariff classification. As a Bahraini

domestic material, the amorphous PET film need not undergo any additional change in classification. And, to the extent the amorphous film is the only material used in the production of biaxially oriented PET film, the final product "is produced exclusively from domestic materials." *See* 19 C.F.R. § Part 102.11(a)(2). As such, the biaxially oriented PET film is a new and different article of Commerce and is a product of Bahrain.

In addition to being textually consistent, this reading of the law and regulations avoids the absurd scenario in which a free trade agreement incentivizes the producer to purchase an input material from a domestic third party and penalizes the manufacturer who invested in the machinery and equipment, personnel, and expertise to build a factory and produce necessary intermediate materials as well as the finished product. That cannot be the intent of the law as written.

## IX.   Conclusion

The salient point is that none of the rules discussed above require that foreign input materials undergo a "*Gibson-Thomson*" substantial transformation. Rather, the required degree of processing is determined with reference to the Specific Rules in 19 C.F.R. Part 102. To the extent a foreign material undergoes the required tariff shift in Bahrain, it becomes a material produced in Bahrain, which need not undergo a further substantial transformation or second tariff shift to count toward the Bahraini value-added requirement.

The implementation regulations are consistent with the complete final text of the USBFTA and General Note 30, HTSUS. CBP is required to follow its own implementation regulations and apply the rules of origin set forth in 19 C.F.R. § 102 to determine whether a material produced in Bahrain is "a new and different article of commerce." If so, it is a "material produced in the territory of one or both of the Parties" for purposes of USBFTA Article 4.1(b). *USBFTA*, art. 4. Under that test, no double substantial transformation is required, and once foreign materials are converted to materials of Bahrain, they count toward the 35% Bahrani value-added threshold.

23

The Court need not determine the status of this merchandise. The issue presently before the Court is limited to whether Defendant properly interpreted the 19 C.F.R. § 10.810(a)(2) and USBFTA Article 4.1(b).

JBF Bahrain, therefore, respectfully asks this Court to grant this Motion for Partial Summary Judgment and order that Customs and Border Protection apply the rules of origin set forth in 19 C.F.R. § 102 when determining whether JBF Bahrain's biaxially oriented PET film is "a new and different article of commerce" and whether the amorphous PET film is a domestic "material produced in the territory of one or both of the Parties" for special tariff treatment under USBFTA Article 4.1(b).

Respectfully submitted,

/s/ Lawrence M. Friedman
Lawrence M. Friedman

Lawrence M. Friedman
lfriedman@barnesrichardson.com
Pietro N. Bianchi
Barnes, Richardson & Colburn LLP
303 East Wacker Drive
Suite 305
Chicago, IL 60601
O: 312 297-9554, M: 847 331-5797
lfriedman@barnesrichardson.com

24