UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. M. MILLER BAKER, JUDGE

_____

| | | |
|---|---|---|
| JBF BAHRAIN W.L.L., | : | |
| as successor-in-interest to | : | |
| JBF Bahrain S.P.C. | : | |
| | : | |
| Plaintiff, | : | |
| | : | Court No. 23-00067 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MEMORANDUM
IN SUPPORT OF ITS CROSS-MOTION FOR PARTIAL
SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S
MEMORANDUM IN OPPOSITION TO PLAINTFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Lawrence M. Friedman
Pietro N. Bianchi
Barnes, Richardson & Colburn LLP
303 East Wacker Drive
Suite 305
Chicago, IL 60601
O: 312 297-9554
M: 847 331-5797
lfriedman@barnesrichardson.com

# Table of Contents

I.    Introduction ......................................................................... 2

II.   The Part 102 Rules Determine Whether Merchandise is Entitled to Duty-Free Entry Under the USBFTA ....................................... 3

III.  The Part 102 Rules Apply to Goods, and Therefore Materials, Produced in Bahrain. .................................................................. 6

    (A)The Part 102 Rules Define Substantial Transformation for Purposes of the USBFTA ................................................................. 6

    (B)The Part 102 Rules Also Apply to the Value-Content Test ........................................................................................... 15

IV.   The USBFTA is Relevant When Interpreting HTSUS General Note 30    18

V.    A Double-Substantial Transformation is Not Required ................ 20

VI.   Conclusion............................................................................ 24

# Table of Authorities

## Cases

*Alcan Aluminum Corp. v. United States*, 165 F.3d 898 (Fed. Cir. 1999) 4, 18

*Bestfoods v. United States*, 165 F.3d 1371 (Fed. Cir. 1999)........ 12, 13, 21

*Boddie v. Department of Navy*, 827 F.2d 1578 (Fed. Cir. 1987) .............. 6

*CPC Int'l, Inc. v. United States*, 933 F. Supp. 1093 (Ct. Int'l Trade 1996) ................................................................................................... 12

*Eckstrom Industries v. United States*, 27 F. Supp. 2d 217 (Ct. Int'l Trade 1998) ................................................................................... 14

*Erlenbaugh v. United States*, 409 U.S. 239 (1972)............................ 16, 20

*Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118 (2d Cir. 2020) ...................................................................................... 7

*Former Emples. of Quality Fabricating, Inc. v. United States DOL*, 28 Ct. Int'l Trade 679, 343 F. Supp. 2d 1272 (2004) ....................... 17

*K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281 (1988)................................. 8

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) ............. 14

*OCP S.A. v. United States*, No. 1:21-cv-00219, 2025 Ct. Intl. Trade LEXIS 32 (Ct. Int'l Trade Mar. 27, 2025) ......................................... 7

*Torrington Co. v. United States*, 764 F.2d 1563 (Fed. Cir. 1985)..... 23, 24

*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)......... 4

*United States Shoe Corp. v. United States*, 20 Ct. Int'l Trade LEXIS 206 (Ct. Int'l Trade Feb. 7, 1996)............................................... 17

*United States v. Freeman*, 3 How. 556 (1845) ........................................ 17

## Statutes

119 Stat. 3581 § 103(a)(1) (2006) ....................................................... 5, 14

19 U.S.C. § 2461-67 (1999) .................................................................... 21

HTSUS, Gen. Note 30(b) (2015).............................................................. 16

HTSUS, Gen. Note 30(b)(ii) (2015) ...................................................... 7, 8

HTSUS, Gen. Note 30(b)(ii)(A) (2015) ................................................ 2, 15

HTSUS, Gen. Note 30(d)(iv)(C) (2015) .................................. 8, 15, 16, 21

HTSUS, Gen. Note 30(d)(iv)(D) (2015) .................................... 9, 16, 21, 23

HTSUS, Gen. Note 4 (2015) ................................................................ 21

HTSUS, Gen. Note 4(c) (2015) .......................................................... 21

## Regulations

19 C.F.R. § 10.177(a)(2) (2015) ........................................................ 22

19 C.F.R. § 10.809(h) (2015) ...................................................... passim

19 C.F.R. § 10.809(i) (2015) ....................................................... passim

19 C.F.R. § 10.810(a)(2) (2015) .......................................................... 8

19 C.F.R. § 10.810(b) (2015) .................................................... 6, 8, 15

19 C.F.R. § 102 (2015) ........................................................................ 3

19 C.F.R. § 102.0 (2015) ............................................................. 6, 15

19 C.F.R. pt. 10, subpt. A Generalized System of Preferences (2015) ... 22

19 C.F.R. pt. 10, subpt. N (2015) ................................................... 3, 5

## Administrative Authorities

42 Cust. B. & Dec. (Aug. 6, 2008) .................................................. 10

*Rules of Origin Applicable to Imported Merchandise*, 59 Fed. Reg. 141
(Jan. 3, 1994) ................................................................... 14, 23

*Uniform Rules of Origin for Imported Merchandise,* 73 Fed. Reg. 43385,
(Jul. 25, 2008) ................................................................. 10, 11

*United States-Bahrain Free Trade Agreement*, 72 Fed. Reg. 58511 (Oct.
16, 2007) ................................................................................. 5

*United States-Bahrain Free Trade Agreement*, 73 Fed. Reg. 42679 (Jul.
23, 2008) ................................................................................. 6

United States-Bahrain Free Trade Agreement, Sep. 14, 2004, available
at    https://ustr.gov/trade-agreements/free-trade-agreements/bahrain-
fta/final-text ................................................................... 2, 9, 23

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. M. MILLER BAKER, JUDGE
_____

| | |
|---|---|
| JBF BAHRAIN W.L.L., | : |
| as successor-in-interest to | : |
| JBF Bahrain S.P.C. | : |
| | : |
| Plaintiff, | : |
| | :    Court No. 23-00067 |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |
| _____ | : |

**<u>PLAINTIFF'S RESPONSE TO DEFENDANT'S MEMORANDUM
IN SUPPORT OF ITS CROSS-MOTION FOR PARTIAL
SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT</u>**

Plaintiff, JBF BAHRAIN W.L.L. ("Plaintiff," "JBF Bahrain," or

"JBF"), of the Kingdom of Bahrain, respectfully submits this

memorandum in response to Defendant's Memorandum In Support Of

Its Cross-Motion For Summary Judgment And In Reply To Defendant's

Memorandum In Opposition To Plaintiff's Motion For Partial Summary

Judgement ("Def. Mot."). For the reasons stated herein, Plaintiff asks

1

this Court to grant its motion for partial summary judgment and deny

defendant's cross-motion for partial summary judgment.

## I.    Introduction

These cross motions ask the Court to determine as a matter of law

how importers and U.S. Customs and Border Protection ("CBP") are to

determine the circumstances under which the U.S.-Bahrain Free Trade

Agreement ("USBFTA" or "Agreement") permits materials imported

into Bahrain from a country other than the United States ("foreign

materials") to be counted toward the 35% value-content requirement in

HTSUS, General Note 30(b)(ii)(A) ("GN 30"). To do that, the Court must

determine the meaning of a "material produced in the territory of

Bahrain" and of a "new or different article of commerce" for purposes of

the USBFTA.

As detailed in Plaintiff's initial brief and herein, the statute as

well as the implementing regulations, when interpreted in a manner

that is consistent with the USBFTA and the Side Letter on Tariff

Classification[1] ("Side Letter") require that the tariff-shift rules set out

---

[1] *United States-Bahrain Free Trade Agreement*, Chapter 4, Side Letter on Tariff Classification (Sep. 14, 2004), available at https://ustr.gov/-trade-agreements/free-trade-agreements/bahrain-fta/final-text.

at 19 C.F.R. Part 102 (2015) ("Part 102 Rules") to be applied to identify

"materials produced in the territory of Bahrain," which count toward

the 35% test. Despite asking the Court to ignore the USBFTA

Implementing Regulations at 19 C.F.R. Part 10, Subpart N (2015)[2]

("Implementing Regulations") and the commitment the U.S. made to

the Kingdom of Bahrain in the Side Letter, Defendant has not claimed

the Implementing Regulations or the Part 102 Rules are *ultra vires* or

in conflict with the statute. As shown below, the regulations are

consistent with the statute, the Agreement, and are a reasonable

exercise of Customs' authority to implement the Agreement.

## II.    The Part 102 Rules Determine Whether Merchandise is Entitled to Duty-Free Entry Under the USBFTA

According to the Defendant, Plaintiff's interpretation of the rules

of origin relies on documents that do not have the force of law. Def. Mot.

at 3 ("Plaintiff cannot circumvent General Note 30, HTSUS, by relying

on documents that do not have the force of law."); Def. Mot. at 8

("Neither the Executive Agreement nor the Side Letter have any legal

effect under U.S. Law."); Def. Mot. at 11 (Plaintiff "incorrectly relies on

---

[2] Plaintiff confirms between 2015 to today no material changes were made to either GN30 or the relevant regulations.

3

the Executive Agreement and Side Letter, which have no independent effect under U.S. law."); Def. Mot. at 12 ("The Executive Agreement is not self-executing and has no independent effect under U.S. law."); Def. Mot. at 13 ("The Executive Agreement and Side Letter do not dictate the governing criteria for preferential treatment.").

Plaintiff's position is based on the statute, *i.e.,* GN 30, and the regulations that control origin determinations under the USBFTA. The United States is required to apply those laws and regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (Agencies must follow their own regulations). Moreover, the text of the USBFTA and the Side Letter are relevant legislative history demonstrating the intent of the President and of Customs, which Congress was aware of when it authorized Customs to implement the Agreement including the Side Letter. *Alcan Aluminum Corp. v. United States*, 165 F.3d 898, 904-05 (Fed. Cir. 1999) (The United States-Canada Free-Trade Agreement was legislative history relevant for interpreting the corresponding HTSUS General Note). The Court, therefore, should not ignore the Agreement and its Side Letter, which are the source of this dispute.

Defendant states—and Plaintiff agrees—that the "Implementation Act also directs [CBP] to prescribe any regulations that may be necessary to carry out its provisions." Def. Mot. at 7; 119 Stat. 3581 § 103(a)(1). Defendant further states that "CBP's implementing regulations are set forth at 19 C.F.R. §§ 10.801-10.827." Def. Mot. at 7; 19 C.F.R. Part 10, Subpart N. Defendant admits that to "account for the Side Letter in its regulations, CBP promulgated 19 C.F.R. § 10.809(i)." Def. Mot. at 7; 19 C.F.R. § 10.809(i)("A 'new or different article of commerce' exists when the country of origin of a good which is produced in a Party from foreign materials is determined to be that country under the provisions of §§ 102.1 through 102.21 of this chapter;").

CBP announced its intention to incorporate the Side Letter into the USBFTA regulations when it solicited public comments on the interim rules:

> CBP notes that, pursuant to letters of understanding exchanged between the Parties on September 14, 2004, in determining whether a good meets the definition of a "new or different article of commerce" in paragraph (i) of § 10.809, the United States should be guided by the provisions of Part 102 of the CBP regulations (19 CFR Part 102).

*United States-Bahrain Free Trade Agreement*, 72 Fed. Reg. 58511, 58513 (Oct. 16, 2007).

5

On July 23, 2008, CBP adopted the interim regulations as the final rule. *United States-Bahrain Free Trade Agreement*, 73 Fed. Reg. 42679 (Jul. 23, 2008). As a confirming step, CBP amended the Part 102 Rules to state that sections "102.1 through 102.21 of this part will also apply for purposes of determining whether an imported good is a new or different article of commerce under. . . the United States-Bahrain Free Trade Agreement regulations." 19 C.F.R. § 102.0. Because Congress authorized them, the Implementing Regulations including the application of the Part 102 Rules are relevant and controlling authority that clarify the meaning of GN 30.

### III.   The Part 102 Rules Apply to Goods, and Therefore Materials, Produced in Bahrain.

### (A)   The Part 102 Rules Define Substantial Transformation for Purposes of the USBFTA

Properly interpreted and applied, GN 30 requires Customs to determine whether foreign materials have become "Material[s] produced in the territory of one or both of the Parties," using the Part 102 rules as required by 19 C.F.R. §§ 10.809(h)-(i) and § 10.810(b). *Boddie v. Department of Navy*, 827 F.2d 1578, 1580 (Fed. Cir. 1987) (Agencies are required to abide by their own regulations.); *OCP S.A. v.*

*United States*, Slip Op. 25-32, 11, 2025 Ct. Intl. Trade LEXIS 32 (Ct. Int'l Trade Mar. 27, 2025) ("Agencies must follow the law and their own regulations."), (*citing Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) ("Under deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations.")).

Defendant states and Plaintiff agrees that "the pertinent subdivision for the analysis in this case is subdivision (b)(ii) of General Note 30." Def. Mot. at 16. Under the USBFTA rules of origin, a finished good produced in Bahrain is entitled to preferential treatment under the USBFTA where:

the sum of—

> (A) the **value of each material produced in the territory of Bahrain or of the United States**, or both, and

> (B) the direct costs of processing operations performed in the territory of Bahrain or of the United States, or both,

is not less than 35 percent of the appraised value of the good at the time the good is entered into the territory of the United States.

GN 30(b)(ii)(emphasis added).

The regulation implementing this rule, 19 C.F.R. § 10.810(b), requires that:

> A good described in paragraph (a)(2) of this section will be considered an originating good under the BFTA only if the sum of **the value of materials produced in one or both of the Parties**, plus the direct costs of processing operations performed in one or both of the Parties, is not less than 35 percent of the appraised value of the good at the time the good is entered into the territory of the United States.

(emphasis added.).[3] Thus, the origin requirements of the Implementing Regulations are materially the same as those of GN 30(b)(ii). *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In determining whether a challenged regulation is valid, a reviewing court must first determine if the regulation is consistent with the language of the statute.").

A "material produced in the territory of Bahrain" is defined in GN 30(d)(iv)(C) as including "**a good** that is. . . a new or different article of commerce that has been . . . produced or manufactured in Bahrain . . .."

---

[3] Further, the Implementing Regulations' requirement in 19 C.F.R. § 10.810(a)(2) that a good be "a new or different article of commerce, that has been grown, produced, or manufactured in the territory of one or both of the Parties" is nearly identical to the requirement in GN 30(b)(ii) that a good must be "a new or different article of commerce that has been grown, produced or manufactured in the territory of Bahrain or of the United States, or both."

(emphasis added). General Note 30 then defines a "new or different article of commerce" as a good that:

> (1) has been substantially transformed from a good or material that is not the product or manufacturer of Bahrain or of the United States, or both; and
>
> (2) has a new name, character, or use distinct from the good or material from which it has been transformed.

GN 30(d)(iv)(D).

It is evident that the United States, and presumably the Kingdom of Bahrain, were not satisfied that the substantial transformation requirement in GN 30(d)(iv)(D) was sufficiently free of ambiguity and subjectivity. The Side Letter to the USBFTA makes this clear in its first paragraph of which states:

> For purposes of determining whether a good is a "new or different article of commerce that has been grown, produced, or manufactured" for the purposes of Article 4.1(b) of the Agreement, each Party should be guided by the specific rules in tariff classification set forth in section 102.20 of the United States Customs Regulations (19 CFR 102.20) (the "Specific Rules"), as may be amended.

This letter indicates an agreement by the parties to clarify the meaning of "substantial transformation" by requiring the parties to apply the specific tariff classification-based rules in 19 C.F.R. § 102.20.

The Side Letter is entirely consistent with the contemporaneous policy statements from Customs concerning its then-held desire to transition from the substantial transformation rule to a tariff-shift test. In the same issue of the Customs Bulletin and Decisions, 42 Cust. B. & Dec. (Aug. 6, 2008), in which CBP announced the Final Rule implementing the USBFTA, CBP proposed to amend the Customs Regulation to establish uniform tariff-shift rules for origin determinations. *Id.* at 6-30, *also published as Uniform Rules of Origin for Imported Merchandise,* 73 Fed. Reg. 43385 (Jul. 25, 2008). According to Customs:

> Under current regulations, there are two primary methods that CBP uses to determine the country of origin of imported goods that are processed in, or contain materials from, more than one country. One method employs case-by-case adjudication to determine whether goods have been "substantially transformed" in a particular country, and the other method employs codified rules, also used to determine whether a good has been "substantially transformed," primarily expressed through changes in tariff classification. . ..

> Despite its heritage and apparent straightforwardness, administration of the substantial transformation standard has not been without problems. These problems derive in large part from the inherently subjective nature of judgments made in case-by-case adjudications as to what constitutes a new and different article and whether processing has resulted in a new name, character, and use. The substantial transformation standard has evolved over many years through numerous court decisions and

CBP administrative rulings. Because the rule has been applied on a case-by-case basis to a wide range of scenarios and has frequently involved consideration of multiple criteria, the substantial transformation standard has been difficult for the courts and CBP to apply consistently and has often resulted in a lack of predictability and certainty for both CBP and the trade community.

In an effort to simplify and standardize country of origin determinations, Customs developed a codified method that uses specified changes in tariff classification (tariff shifts) and other rules to express the substantial transformation concept. Under this codified method, the substantial transformation that an imported good must undergo in order to be deemed a good of the country where the change occurred is usually expressed in terms of a specified tariff shift as a result of further processing. . ..

**The Part 102 rules of origin will . . . be used to administer those free trade agreements already negotiated that use the substantial transformation standard as part of the test to determine whether products qualify for reduced tariffs where under these agreements the trade negotiators had reached an understanding that the codified rules under Part 102 should guide those determinations, to date, the United States-Bahrain and United States-Morocco Free Trade Agreements.** It is also CBP's intent to apply the Part 102 rules to any FTA negotiated in the future using the substantial transformation standard, unless otherwise specified.

73 Fed. Reg. at 43386-87 (emphasis added).

CBP could not more clearly told producers in Bahrain and importers in the United States that the Side Letter reflects an agreement with Bahrain to apply the Part 102 rules to determine whether products qualify for duty preference under the USBFTA

substantial transformation test as embodied in phrase "new and different article of commerce." Consistent with that policy and the Side Letter, the Implementing Regulations adopt the entirety of § 102.1 through § 102.21 as controlling the meaning of a "new or different article of commerce" under the USBFTA. 19 C.F.R. § 10.809(i). This provides the agreed clarity and specificity the U.S. and Bahrain sought to introduce into the Agreement.

None of this is surprising; the Courts reached the same conclusion in 1999 regarding the use of the Part 102 Rules for marking products of Canada and Mexico under the North American Free Trade Agreement. In *CPC Int'l, Inc. v. United States*, 933 F. Supp. 1093 (Ct. Int'l Trade 1996), *aff'd in part, vacated in part, sub nom. Bestfoods v. United States*, 165 F.3d 1371 (Fed. Cir. 1999), the importer argued that the Part 102 Rules did not supplant the traditional substantial transformation test for purposes of determining the country of origin of goods from Canada or Mexico that were further processed in the U.S. *Bestfoods*, 165 F.3d at 1373. The Court of International held that the Part 102 Rules did not replace the substantial transformation test, which remained in effect in addition to the new NAFTA-specific rules. *Bestfoods*, 165 F.3d at 1373.

The Federal Circuit partially reversed the CIT. *Bestfoods*, 165 F.3d at 1373. Summarizing the Government's argument, the Court characterized the Part 102 tariff-shift Rules as the method for determining whether goods have undergone a substantial transformation following their importation. *Id*. The Court held that the Part 102 Rules must be employed "for determining whether a particular good is a good of the exporting country or whether it has been sufficiently altered after importation to qualify as a good of the importing country." *Id*. at 1374. Moreover, the Court of Appeals concluded that when Congress authorized the Secretary of Treasury to implement regulations defining "articles of foreign origin," it authorized an administrative change that replaced the substantial transformation test with a tariff-shift methodology. *Id*. at 1375. When the USTR signed the USBFTA Side Letter and CBP promulgated the USBFTA implementing regulations, they were aware of *Bestfoods* and the government's desire to use tariff-shift rules rather than substantial transformation to determine the origin of goods and materials.

As in *Bestfoods,* the face of the USBFTA regulations make it clear that the Part 102 Rules apply. The Implementation Act gave CBP the

13

authority and flexibility to promulgate regulations "as may be necessary." 119 Stat. 3581, § 103(a)(1); s*ee Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2263 (2024) (Delegations using terms such as "appropriate" or "reasonable" "leave[] agencies with flexibility.'). As in *Bestfoods*, CBP used its authority under 119 Stat. 3581, § 103(a)(1) to promulgate § 10.809(h) and (i) to clarify the meaning of a "new or different article of commerce" in GN 30(d)(iv)(D). *See, CPC Int'l, Inc.*, 933 F. Supp. at 1104-05 (The tariff-shift rules provide "greater specificity, more objectivity, transparency, and predictability in origin determinations.") (*quoting Rules of Origin Applicable to Imported Merchandise*, 59 Fed. Reg. 141, 142 (Jan. 3, 1994)). Clarifying a definition for greater specificity, objectivity, transparency, and predictability in origin determinations is a reasonable decision. Accordingly, the Part 102 Rules apply when determining whether a good is a material produced in Bahrain for purposes of GN 30(b)(ii). *Eckstrom Industries v. United States*, 27 F. Supp. 2d 217, 222 (Ct. Int'l Trade 1998) (An agency must act in accordance with its regulations.).

**(B)    The Part 102 Rules Also Apply to the Value-Content Test**

Defendant claims that the Part 102 Rules "offers no guidance on the second prong of General Note 30(b)(ii), namely, the 35% value-content requirement including whether certain materials may be included in that calculation." Def. Mot. at 28. This is not correct. For purposes of the USBFTA rules of origin, **materials** produced in the territory of Bahrain count toward the 35% value-content requirement of GN 30(b)(ii)(A) and of 19 C.F.R. § 10.810(b). A material produced in the territory of Bahrain is a "**good** that is. . . a new or different article of commerce" that was produced or manufactured in Bahrain. GN 30(d)(iv)(C) (emphasis added); 19 C.F.R. § 10.809(h) (emphasis added).

As detailed above, while GN 30(d)(iv)(D) references substantial transformation, 19 C.F.R. § 10.809(i) explicitly directs that the Part 102 tariff-shift Rules be used to identify "new and different articles of commerce." *See also* 19 C.F.R. § 102.0 (The Part 102 rules apply for purposes of § 10.809, which includes the definition of "new or different article of commerce.").

The reference in Section 102.0 to "imported goods" does not limit the application of Part 102 to finished goods. This is consistent with GN

30(d)(iv)(C), which defines a "material produced in the territory of

Bahrain or of the United States, or both" as "a good that is either wholly

the growth, product or manufacture of Bahrain or of the United States,

or both, or a new or different article of commerce that has been grown,

produced or manufactured in the territory of Bahrain or of the United

States, or both." This understanding of the scope of Part 102 is further

confirmed by the use of the term "good" to mean a material in GN 30(b),

which states that "[f]or purposes of this note, the term 'good' means any

merchandise, product, article or **material**." (emphasis added). The

statute, therefore, uses "material" to refer to a "good," GN 30(d)(iv)(C),

and "good" to refer to a "material." GN 30(b). Thus, when GN

30(d)(iv)(D) refers to a "new and different article of commerce" as a

"good," that is also a reference to materials produced in the territory of

Bahrain.

Further, the phrase "new and different article of commerce" must

have the same meaning in GN 30(b)(ii); GN 30(d)(iv)(C) defining

materials produced in Bahrain; and the Implementing Regulations,

including 19 C.F.R. §§ 10.809(h) and (i). *Erlenbaugh v. United States*,

409 U.S. 239, 243 (1972) (Laws "*in pari materia*—that is, pertain to the

same subject—and, under settled principles of statutory construction, should therefore be construed 'as if they were one law.'") (*quoting United States v. Freeman*, 3 How. 556, 564 (1845)). The phrase "new and different article of commerce" should have the same meaning when used in GN 30(d)(iv)(C) to describe materials as it does in GN 30(b)(ii) in relation to finished goods and elsewhere within the related regulations. *United States Shoe Corp. v. United States*, 20 Ct. Int'l Trade LEXIS 206 (Ct. Int'l Trade Feb. 7, 1996) ("whenever possible courts construe statutes and regulations *in pari materia*.") (cleaned up). Therefore, because 19 C.F.R. § 10.809(h) states materials are goods that are new or different articles of commerce and 19 C.F.R. § 10.809(i) defines a "new or different article of commerce" as existing "when the country of origin of a good which is produced in a Party from foreign materials is determined to be that country under the provisions of §§ 102.1 through 102.21 of this chapter," the Court should find that that the Part 102 Rules direct whether a material is a product of Bahrain for the 35% value-content requirement of GN 30(b)(ii)(A). *Former Emples. of Quality Fabricating, Inc. v. United States DOL*, 28 Ct. Int'l Trade 679, 685, 343 F. Supp. 2d 1272 (2004) (Statutes that relate to the same

17

matter, *in pari materia*, should be read to "work harmoniously together.").

## IV.   The USBFTA is Relevant When Interpreting HTSUS General Note 30

Defendant states and Plaintiff agrees that legislative history "provides useful guidance in applying trade agreements domestically." Def. Mot. at 26. *See*, *Alcan Aluminum Corp.*, 165 F.3d at 904-05 (The text of the United States-Canada Free-Trade Agreement was relevant when interpreting the HTSUS General Note.). Nevertheless, Defendant contends that the Side Letter is not relevant legislative history because it was not included in the documents the President submitted to Congress when seeking approval of the USBFTA. Def. Mot. at 4-5. However, the documents the President submitted to Congress included "22 letters related to the Agreement that the Governments of the United States and Bahrain have exchanged." Def. Mot. Ex. C at 9. It is not clear whether the Side Letter was submitted to Congress because the 22 letters were not retained with the rest of the documents the President submitted. Def. Mot. Ex. C.

Regardless, the President informed Congress that:

in a separate agreement set out in a side letter regarding Chapter
Four, the Parties provide that, for purposes of determining
whether a good is a "new or different article of commerce that has
been grown, produced, or manufactured" for purposes of Chapter
Four, each country is to be guided by [the Part 102 Rules].

Def. Mot. Ex. C at 1030. The ITC's report to Congress, upon which

Defendant relies, also informed Congress of the Side Letter and the

USTR's intention to direct CBP to apply the Part 102 Rules when

determining whether there is a new or different article of commerce.

Def. Mot. Ex. F at 42.

Accordingly, Congress directed the President to proclaim and

appropriate Officers of the United States Government to issue

regulations implementing the USBFTA with full knowledge of the Side

Letter. That is sufficient to demonstrate the intention of the President

and USTR to supplement the Implementation Act with regulations

directing CBP to use the Part 102 Rules in origin determinations. CBP

acknowledged this legislative history in the Federal Register when it

declared its intent to be guided by the Part 102 Rules when determining

whether a good is a new or different article of commerce.[4]

---

[4] 72 Fed. Reg. 58511, 58513.

19

The Side Letter, Presidential Support for the USBFTA, the ITC
report on the USBFTA, and CBP' interim rules all indicate that 19
C.F.R. § 10.809(i) when read *in pari materia* with GN 30 requires that
the Part 102 Rules control whether a new or different article of
commerce exists for GN 30(b)(ii). The Court should consider this
legislative history, interpret GN 30 in harmony with the Implementing
Regulations, and hold that the Part 102 Rules control whether a
material is a product of Bahrain for purposes of the 35% value-content
requirement. *Erlenbaugh*, 409 U.S. at 243 (Terms that are *in pari
materia* should be construed consistently throughout the law and
regulation.).

## V.    A Double-Substantial Transformation is Not Required

Defendant maintains that foreign materials must undergo two
substantial transformations before their values count toward the
USBFTA 35% value-content requirement. Def. Mot. at 19-27.
Defendant, however, fails to acknowledge that the phrase "double" or
"dual substantial transformation" is nowhere in GN 30 nor in the
USBFTA Rules of Origin regulations at 19 C.F.R. Part 10, Subpart N.

Instead, Defendant devotes a portion of its brief to discuss the Generalized System of Preferences ("GSP") to argue that as "with GSP, the 35% value added requirement in GN 30 mandates a dual transformation." Def. Mot. at 25. *See* General Note 4. Defendant, however, fails to explain why precedent concerning a different tariff preference program is more probative than the text of GN 30, the Implementing Regulations, and the Agreement including the Side Letter on Classification.

Notably, while the GSP does not define "materials produced in the beneficiary developing country," General Note 30 provides that a material produced in Bahrain or the United States is a good that is "a new or different article of commerce." *Compare* General Note 4(c) *with* General Note 30(d)(iv)(C); *see also* 19 U.S.C. § 2461-67 (1999) (No definition provided for "materials produced in the beneficiary developing country."). General Note 30 proceeds to define these terms, indicating the intention to move away from GSP toward greater specificity, objectivity, transparency, and predictability in USBFTA origin determinations. *See* General Note 30(d)(iv)(C)-(D); *see also* *Bestfoods*, 165 F.3d at 1375 (The effect of altering the definition was to

21

adopt the tariff-shift approach instead of the substantial transformation approach, which changed the scope of goods subject to the duty-free program).

This clear break from the GSP was solidified in the valid Implementing Regulations, which define materials "produced in the territory of one or both of the Parties" as a good that is "new or different article of commerce" for GN 30 without reference to substantial transformation. 19 C.F.R. § 10.809(h). The GSP regulations, in contrast, define "materials produced in the beneficiary developing country" as being "**Substantially transformed** in the beneficiary developing country into a new and different article of commerce." 19 C.F.R. § 10.177(a)(2) (2015) (emphasis added). The USBFTA Implementing Regulations define a "new or different article of commerce" with clarity and specificity as existing "when the country of origin of a good which is produced in a Party from foreign materials is determined to be that country under the provisions of §§ 102.1 through 102.21 of this chapter." *Compare* 19 C.F.R. Part 10, Subpart A - Generalized System of Preferences (2015) *with* 19 C.F.R. § 10.809(i). Thus, the text of General Note 30, the Implementing Regulations, and the text of

22

Agreement including the Side Letter on Classification indicate a break from the GSP rule of origin toward applying the Part 102 Rules to identify the materials that are to be counted toward the 35% value-content requirement. 59 Fed. Reg. at 142 (The Part 102 Rules codify "the current 'substantial transformation' standard.").

Further, applying the Part 102 Rules in the GN 30(b)(ii) analysis is consistent with *Torrington Co. v. United States*, 764 F.2d 1563 (Fed. Cir. 1985) except that the substantial transformation standard applied to identify products of Bahrain is replaced by the Part 102 Rules. In *Torrington*, the Court held that if non-BDC materials are substantially transformed "into an intermediate article of commerce, then the intermediate product would be an article produced in the BDC, and the value of that product" would qualify toward the 35% value-content requirement. *Id.* at 1567. Similarly, GN 30(b)(ii), the Implementing Regulations, and the text of the Agreement require foreign materials to become a new, definable intermediate product; *i.e.*, foreign materials must become a material produced in the territory of one or both of the Parties. General Note 30(d)(iv)(D); 19 C.F.R. § 10.809(h); *USBFTA*. The Court's concern in *Torrington* with potential "pass-through operations"

is addressed in GN 30 and the Implementing Regulations by the Part 102 Rules. *Torrington Co.*, 764 F.2d at 1567 (The 35% value-content requirement assures that GSP provides "benefits to developing countries without stimulating the development of 'pass-through' operations the major benefit of which accrues to enterprises in developed countries.").

The USBFTA relies on a coherent and clearly stated rule that once input materials are determined to have been produced in Bahrain, their value is counted toward the 35% value-content requirement. Nothing in the law, regulations, or legislative history requires a second tariff shift or substantial transformation of a material produced in Bahrain to be treated as such.

## VI.    Conclusion

For all of the forgoing reasons, Plaintiff respectfully asks the Court to find that under GN 30 and the USBFTA Implementing Regulations foreign materials further processed in Bahrain such that they satisfy the Part 102 tariff-shift Rules are "materials produced in" Bahrain for purposes of the 35% value-content requirement in GN 30(b)(ii)(A) and 19 C.F.R. § 10.810(b) and that the Part 102 tariff-shift

24

Rules direct whether an imported good is a new or different article of commerce.

Respectfully submitted,

/s/Lawrence M. Friedman
Lawrence M. Friedman

Lawrence M. Friedman
lfriedman@barnesrichardson.com
Pietro N. Bianchi
Barnes, Richardson & Colburn LLP
303 East Wacker Drive
Suite 305
Chicago, IL 60601
O: 312 297-9554, M: 847 331-5797
lfriedman@barnesrichardson.com

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. M. MILLER BAKER, JUDGE

| | | |
|---|---|---|
| JBF BAHRAIN W.L.L., | : | |
| as successor-in-interest to | : | |
| JBF Bahrain S.P.C. | : | |
| | : | |
| Plaintiff, | : | |
| | : | Court No. 23-00067 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## **PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

The brief complies with the 14,000 word limitation imposed by Chambers Procedures. The word count is 5,373.

Respectfully submitted,

/s/ Lawrence M. Friedman
Lawrence M. Friedman

Lawrence M. Friedman
Pietro N. Bianchi
Barnes, Richardson & Colburn LLP
303 East Wacker Drive
Suite 305
Chicago, IL 60601
O: 312 297-9554, M: 847 331-5797
lfriedman@barnesrichardson.com

1