UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. M. MILLER BAKER, JUDGE

——————————————————————
                                              :
JBF BAHRAIN W.L.L.,                            :
as successor-in-interest to                    :
JBF Bahrain S.P.C.,                            :
                                              :
            Plaintiff,                          :
                                              :
            v.                                 :        Court No. 23-00067
                                              :
UNITED STATES,                                :
                                              :
            Defendant.                         :
——————————————————————:

## DEFENDANT'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

                              BRETT A. SHUMATE
                              Assistant Attorney General

                              PATRICIA M. McCARTHY
                              Director

                              JUSTIN R. MILLER
                              Attorney-In-Charge
                              International Trade Field Office

*Of counsel*:                 MARCELLA POWELL
TAYLOR R. BATES               Senior Trial Counsel
Office of the Assistant Chief Counsel   Dept. of Justice, Civil Division
International Trade Litigation   Commercial Litigation Branch
U.S. Customs and Border Protection   26 Federal Plaza – Suite 346
                              New York, New York 10278
                              (212) 264-9230

Dated: March 20, 2026                    *Attorneys for Defendant*

# **TABLE OF CONTENTS**

SUMMARY OF THE ARGUMENT.................................................. 1

ARGUMENT............................................................................... 2

I.   GENERAL NOTE 30, HTSUS, IS THE CONTROLLING
     AUTHORITY FOR THE RULES OF ORIGIN FOR
     PREFERENTIAL TREATMENT UNDER THE UBFTA...... 2

     A. The Plain Language of Subdivision (b)(ii) of General
        Note 30, HTSUS, Does Not Require A Change In
        Classification Or "Tariff Shift". ......................................... 4

     B. JBF Bahrain's Construction of Subdivision (b)(ii) of
        General Note 30, HTSUS, Cannot Be Reconciled With The
        Text and Structure of The Note...................................... 10

     C. Because The Executive Agreement And Side Letter Are
        Non-Self Executing International Agreements, They
        Should Note Be Used As Tools To Interpret The Note. .. 11

     D. CBP's Part 102 Regulations Should Not Be Used To
        Interpret General Note 30, HTSUS................................. 12

     E. Legislative History Cannot Be Used to Interpret The
        Plain Meaning of General Note 30, HTSUS.................... 17

II   SUBDIVISION (b)(ii) OF GENERAL NOTE 30 REQUIRES
     A DUAL SUBSTANTIAL TRANSFORMATION................ 20

CONCLUSION ............................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Al-Bihani v. Obama*, 619 F.3d 1 (D.C. Cir. 2010) ........................ 14

*Alcan Aluminium Corp. v. United States*, 165 F.3d 898
(Ct. Int'l Trade 2025) .................................................................. 10

*Sosa v. Alverez-Machain*, 542 U.S. 692 (2004)............................. 10

*Beverly Enters., Inc. v. Herman*, 119 F. Supp. 2d 1
(D.D.C. 2000) .............................................................................. 19

*Bufkin v. Collins*, 145 S. Ct. 728 (2025) ..................................... 10

*Cardenas v. Stephens*, 820 F. 3d 197 (5th Cir. 2016). .................... 14

*Connecticut Nat. Bank v. Germain*, 503 U.S. 249 (1992).......... 5, 15

*District of Columbia v. Gladding*, 263 F. 628 (
D.C. Cir. 1920)                                                              19

*Garcia v. United States*, 469 U.S. 70 (1984)................................. 18

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530
U.S. 1 (2000)................................................................................ 5

*Lamie v. Trustee*, 540 U.S. 526 (2004)........................................... 5

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024)................. 5

*Medellin v. Texas*, 552 U.S. 491 (2008) ........................................ 12

*Meyer Corp., U.S. v. United States*, 43 F.4th 1325
(Fed. Cir. 2022) ........................................................................... 23

*Northern Pac. Ry. Co. v. United States*, 156 F.2d 346
(7th Cir. 1946)............................................................................. 14

*Public Lands Council v. Babbitt,* 529 U.S. 728 (2000)................. 17

*Rubin v. United States*, 449 U.S. 424 (1981)................................... 5

*Sharp v. United States*, 580 F.3d 1234 (Fed. Cir. 2009) .............. 18

*Sosa v. Alverez-Machain*, 542 U.S. 692 (2004)............................. 12

*Strategic Hous. Fin. Corp. of Travis Cnty. v. United States*, 608
F.3d 1317 (Fed. Cir. 2010) ......................................................... 19

*Torrington Co. v. United States*, 596 F. Supp. 1083 (Ct. Int' Trade
1984).............................................................................................. 19

*Torrington Co. v. United States*, 764 F.2d 1563 (Fed. Cir. 1985) . 23

*TRW Inc. v. Andrews,* 534 U.S. 19 (2001) ..................................... 10

*U.S. v Calamaro*, 354 U.S. 351 (1957) ......................................... 14

*United States v. Freeman,* 44 U.S. (3 How.) 556 (1845)................ 19

*United States v. Gonzales*, 520 U.S. 1 (1997) ........................... 4, 15

*WC Homes, LLC v. United States*, 2010 WL 3221845, at *4
 (D. Md. Aug. 13, 2010) ............................................................. 16

**STATUTES**

Public Law 109-169 (HR 4340)

Subdivision (b)(ii) of Note 30, HTSUS...................................*passim*

Subdivision (b)(iii) of Note 30, HTSUS .................................*passim*

Subdivision (d)(iv)(B) of Note 30, HTSUS.............................*passim*

Subdivision (d)(iv)(D) of Note 30, HTSUS.............................*passim*

Subdivision (d)(iv)(H) of Note 30, HTSUS .............................*passim*

19 U.S.C. 2461-2465 ...................................................................... *23*

**REGULATIONS**

19 C.F.R. § 102.....................................................................*passim*

19 C.F.R. § 102.20 .......................................................................... 4

19 C.F.R. § 10.801-10.827............................................................ 12

**SECONDARY SOURCES**

2B Sutherland, *Statutes and Statutory Construction* § 51.01
(Norman J. Singer ed., 5th ed. 1992). ......................................... 16

## SUMMARY OF THE ARGUMENT

The question presented by the parties' cross motions for partial summary judgment is whether subdivision (b)(ii) of General Note 30, Harmonized Tariff Schedule of the United States (HTSUS) (Note 30) requires that a good imported into the United States from the Kingdom of Bahrain (Bahrain) undergo two substantial transformations, or whether a single transformation is sufficient to render the imported good an "originating good" for the purpose of Note 30.  Under General Note 30, if an imported good is not wholly the growth, product or manufacture of the Kingdom of Bahrain or the United States or both, the Note requires two separate and distinct prerequisites: that the imported good be a "new or different article of commerce" **and** the satisfaction of a 35% value-content requirement.  The 35% value-content requirement requires two substantial transformations.

JBF Bahrain argues that Note 30 contains an ambiguous term and advocates for using the Executive Agreement, the Side Letter, and U.S. Customs and Border Protection's (CBP') Part 102 regulations to interpret the ambiguity perceived by plaintiff in the Note.  JBF Bahrain posits that those extrinsic documents require that non-originating

1

materials undergo a change in classification or "tariff-shift" for in order for those inputs to become Bahrani materials, and not dual substantial transformations. As we demonstrate below, none of JBF Bahrain's arguments are supported by the plain and unambiguous terms of the law, in particular Note 30, and the Government's cross-motion for partial summary judgment should be granted.

## ARGUMENT

**I.    GENERAL NOTE 30, HTSUS, IS THE ONLY CONTROLLING AUTHORITY FOR THE RULES OF ORIGIN FOR PREFERENTIAL TREATMENT UNDER THE UBFTA.**

The initial legal question presented by the parties' cross motions for summary judgment is whether subdivision (b)(ii) of General Note 30requires that a good imported into the United States from Bahrain undergo a "double" substantial transformation, or whether a single transformation is sufficient to render the imported good an "originating good" for the purpose of Note 30. As framed by the parties' briefing, the answer to this legal question turns largely on which rules of origin apply. In our moving brief, we established that the rules of origin set forth in Note , are controlling. Based on the plain language of Note

30(b)(ii), (d)(iv)(D), and (d)(iv)(H), the 35% value-content requirement in subdivision (b)(ii) requires dual substantial transformations.

Initially, JBF Bahrain W.L.L. (JBF Bahrain) primarily argued that the Executive Agreement, Side Letter, and CBP's Part 102 regulations were the controlling authorities that imposed rules of origin requiring a change in classification or "tariff shift" for a good to qualify as originating in Bahrain. Pl.'s Br. at 2-3, 16. JBF Bahrain now argues that the definition of a term used in subdivision (b)(ii) of Note 30, HTSUS, is ambiguous, and that CBP's "controlling" Part 102 regulations should be used to interpret it. Pl.'s Reply Br. at 9. JBF Bahrain's argument is still unpersuasive. As we show below, the correct statutory construction of Note 30, HTSUS, begins and ends with the plain language of the Note itself. Note 30, HTSUS, is a self-contained statute that sets forth a framework that is unambiguous and controlling.

### A. The Plain Language Of Subdivision (b)(ii) Of General Note 30, HTSUS, Does Not Require A Change In Classification Or "Tariff Shift."

JBF Bahrain argues that the definition of "new or different article of commerce," appearing in subdivision (b)(ii) of Note 30, is ambiguous.

3

Specifically, JBF Bahrain argues that the term "substantially transformed" used in the definition of "new or different article of commerce," Gen. Note 30(d)(iv)(D), is ambiguous, and opines that the Side Letter exists because the "United States, and presumably the Kingdom of Bahrain, were not satisfied that the substantial transformation requirement in GN 30 30(d)(iv)(D) was sufficiently free of ambiguity and subjectivity." Pl.'s Reply Br. at 4. Based on this premise, JBF Bahrain argues that Note 30 should be "interpreted in a manner consistent with the [Executive] Agreement and Side Letter" and, therefore, the tariff shift rules set out in the CBP's Part 102 regulations are "controlling authority that clarify the meaning of GN 30." Pl.'s Reply Br. at 6. JBF Bahrain's statutory interpretation analysis, however, presents several errors. First, JBF Bahrain improperly relies on extrinsic material to interpret the plain and unambiguous language of Note 30, second, its interpretation contradicts the plain language of Note 30, and finally, it renders multiple provisions of the Note superfluous.

When interpreting statutory provisions, courts apply the principles of statutory construction. *Loper Bright Enters. v. Raimondo,*

4

603 U.S. 369, 374 (2024) ("Courts interpret statutes, no matter the context, based on the traditional rules of statutory construction . . ."); *United States v. Gonzales*, 520 U.S. 1, 4 (1997). Every analysis of statutory interpretation begins with an examination of the plain language of the statute. The plain language rule dictates that where the meaning of the statutory language is clear, then no further inquiry is required. *Lamie v. Trustee*, 540 U.S. 526, 534 (2004)) ("[W]hen the statute's language is plain, the sole function of the courts -at least where the disposition required by the text is not absurd -is to enforce it according to its terms.") (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S.1, 6 (2000)). "When the words of a statute are unambiguous, then, the first canon is also the last: 'judicial inquiry is complete.'" *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253 (1992) (citing *Rubin v. United States*, 449 U.S. 424, 430 (1981)).

Here, the proper construction of subdivision (b)(ii) of Note 30 begins with its plain language. Note 30 provides a comprehensive, self-contained framework for determining whether a good imported into the United States is "eligible for treatment as an originating good of a UBFTA country." *See* Gen. Note 30(a). Note 30(b) identifies three

categories of imported goods that are considered to be originating goods of the UBFTA and expressly states that subdivision (b) is "*subject to the provisions of subdivisions of (c), (d), (e), (g) and (h)* [of Note 30]," Gen. Note 30(b) (emphasis added), rendering application of, and compliance with, those provisions mandatory.  Subdivisions (c), (e), (g) and (h) set forth the rules for the application of the requirements in each category. Subdivision (d) provides statutory definitions and direction on the scope of their application.  *Compare e.g.,* Gen. Note 30(d)(i) ("For purposes of subdivision (b)(i) of this note, except as otherwise provided in subdivision (e) of this note . . .") *with* Gen. Note 30(d)(iv) ("For the purposes of this note[.]").

The first category of goods covered by Note 30, described in subdivision (b)(i), are those that are "wholly the growth, product or manufacture of Bahrain or of the United States, or both."  *See* Gen. Note 30(b)(i).

The second category of goods, relevant here, consists of goods not covered by subdivision (b)(iii) which are

> a new or different article of commerce that has been grown, produced or manufactured in the territory of Bahrain or of the United States, or both," and the sum of--

6

    (A)  the value of each material[1] produced in the territory of Bahrain or of the United States, or both, and

    (B)  the direct costs of processing operations performed in the territory of Bahrain or of the United States, or both,

is not less than 35 percent of the appraised value of the good at the time the good is entered into the territory of the United States; or

*See* Gen. Note 30(b)(ii).  By its express terms, subdivision (b)(ii) requires a calculation (sum) of two specific values and mandates that the sum be at least 35% of the appraised value of the good at the time it is entered into the United States.

Finally, the third category of goods in Note 30 applies to specific goods that undergo a change in classification or "tariff shift."  For those goods, the 35% value-content requirement does not apply.  Subdivision (b)(iii) provides:

    (iii) the good falls in a heading or subheading covered by a provision set forth subdivision (h) of this

---

[1] Subdivision 30(d)(iv) of General Note 30 defines "material" as "a good, including a part or ingredient, that is used in the growth, production or manufacture of another good that is a new or different article of commerce that has been grown, produced or manufactured in Bahrain or of the United States, or both."

note . . .

*See* Subdivision (b)(iii), Gen. Note 30(b)(iii).

The plain language of Note 30 expressly indicates that there are three separate and distinct categories of goods, and only one category, namely, subdivision (b)(iii) requires a change in classification or tariff shift.  It also makes clear that all relevant definitions and explanatory language are contained within the Note itself and are mandatory provisions.  Notably, Note 30 does not contain any references to the Agreement, Side Letter, or any CBP regulations.

Notwithstanding the fundamental principle of statutory interpretation that the analysis begins with the text of the statute, JBF Bahrain makes no attempt to interpret the plain language of Note 30. Although JBF Bahrain acknowledges that Note 30 defines "new or different article of commerce" in subdivision (d)(iv)(D), Pl.'s Reply Br. at 9, it fails to meaningfully analyze the plain language of the definition or the definitions of terms contained within that subdivision.  A "new or different article of commerce" is

> a good that—
> (1)has been substantially transformed from a good or material that is not wholly the growth, product or

> manufacture of Bahrain or of the United States, or both;
> and
>
> (2) has a new name, character or use distinct from the good
> or material from which it was transformed,
>
> but a good shall not be considered a new or different article of
> commerce by virtue of having undergone simple combining
> or packaging operations, or mere dilution with water or another
> substance that does not materially alter the characteristics
> of the good.

Subdivision 30(d)(iv)(D), Note 30. JBF Bahrain argues that the term

"substantially transformed" is ambiguous, points to the Side Letter as

evidence of the ambiguity, and relies on the Part 102 Regulations to

resolve the ambiguity. Pl.'s Reply Br. at 9. Yet, JBF Bahrain fails to

acknowledge or analyze subdivision (d)(iv)(H), defining "substantially

transformed" "for the purposes of" Note 30, and fails to explain why this

definition does not resolve the ambiguity it identifies. *See Loper Bright*

*Enters.,* 603 U.S. at 400 (courts "understand that [] statutes, no matter

how impenetrable, do - in fact, must - have a single, best meaning.")

Thus, to the extent that "substantially transformed" is ambiguous,

subdivision (d)(iv)(H) resolves that ambiguity, and where the plain

language of a statute is unambiguous, the Court need not rely on

external sources to ascertain its meaning.

Nor does JBF Bahrain analyze the definition of "material" in

subdivision (d)(iv)(B), which is critical to determining which non-originating inputs are to be counted towards the 35% value-content requirement and, in turn, necessitates a dual transformation.  *See* Def.'s Br. 19-27.  Accordingly, JBF Bahrain's argument also fails because it is not supported by the plain language of Note 30.

> **B.    JBF Bahrain's Construction Of Subdivision (b)(ii) of Note 30, HTSUS, Cannot Be Reconciled With The Text and Structure of The Note.**

 "[A] statute ought, upon the whole, be so constructed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *See TRW Inc. v. Andrews,* 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker,* 533 U.S. 167, 174 (2001) (internal quotations omitted by *TRW* court)); *see also Bufkin v. Collins*, 145 S. Ct. 728, 741 (2025) (expressing reluctance "to treat statutory terms as surplusage in any setting.").

JBF Bahrain argues that the Side Letter is an agreement by the parties to clarify the meaning of "substantial transformation" in Note 30, HTSUS, by requiring the parties to apply the "specific tariff classification-based rules in 19 C.F.R. 102.20."  Pl.'s Reply Br. at 9.  As an initial matter, JBF Bahrain's theory that the Side Letter represents

10

a joint agreement between the United States and Bahrain regarding

"the meaning of the substantial transformation requirement in

subdivision (d)(iv)(D)" is contradicted by the sequence in which the legal

authorities were enacted.  Pl.'s Reply Br. at 5.  Note 30 was

incorporated into the HTSUS by way of Presidential Proclamation in

2006 pursuant to the authority Congress granted in the United States

Bahrain Free Trade Agreement Implementation Act (the Act).  The Side

Letter, issued in 2004, predates Note 30 by two years and therefore

could not have been issued as a clarifying document for the Note.

*Contra* Pl.'s Reply Br. at 6.  Therefore, JBF Bahrain's attempt to link

the Side Letter to Note 30 is unavailing.

Moreover, the Side Letter identifies a single regulation, 19 C.F.R.

§ 102.20, and not the "Part 102 Rules" generally.  Specifically, the Side

Letter states that the term "new or different article of commerce"

> will be guided by the specific rules in tariff
> classification set forth in section 102.20 of the
> United States Customs Regulation (19 C.F.R.
> 102.20) (the "Specific Rules"), as may be
> amended.

*See* Ex. E, Side Letter.  The Side Letter also does not identify CBP's

implementing regulations, 19 C.F.R. §§ 10.801-10.827, which makes

11

sense, since the implementing regulations were enacted well after the issuance of the Side Letter.  JBF Bahrain cannot use the Side Letter to incorporate regulations that were not referenced in that document, especially regulations that were enacted after the document.

Furthermore, JBF Bahrain's interpretation of Note 30 violates two fundamental principles of statutory construction: 1) a statute must be construed to give effect to every word, and 2) statutes should be interpreted in a manner that does not render any portion surplusage.

JBF Bahrain's interpretation of subdivision (b)(ii) is inconsistent with subdivision (b)(iii).  The provisions of subdivision (b)(iii) apply "in lieu of the provisions of subdivision (b)(ii)" to goods falling within an HTSUS heading or subheading identified in subdivision (h).  Gen. Note 30(b)(iii), (h).  Subdivision (h) sets forth tariff shift rules for certain goods, and subdivision (g) provides guidance on interpreting subdivision (h).  The organizational structure of the statute, namely the limitations on when each provision of subdivision (b) applies, demonstrates that the requirements of each provision are unique to that provision. In other words, tariff shift rules only apply to imported goods eligible for treatment as an originating good under subdivision (b)(iii).

Under JBF Bahrain's interpretation of the term "new or different article of commerce" in subdivision (b)(ii), imported products not covered by subdivision (b)(i) would also require a "tariff shift" or change in classification under the Part 102 regulations.  This interpretation reads out the statutory definitions of "new or different article of commerce" in subdivision (d)(iv)(D) and "substantially transformed" in subdivision (d)(iv)(H) as each of those definitions contains discrete requirements that must be met -- and they are not changes in classification or tariff-shifts.  Note 30 expressly provides that subdivision (b)(ii) is "subject to the provisions in subdivisions (c), (d), (e), (g) and (h)."  JBF Bahrain offers no explanation as to how its interpretation can be reconciled with the plain meaning of subdivision (b)(ii).

### C.  Because The Executive Agreement And The Side Letter Are Non-Self-Executing International Agreements, They Should Not Be Used As Tools To Interpret the Note

Notwithstanding that the Executive Agreement and the Side Letter are not United States law, JBF Bahrain continues to press its argument that they are relevant to the interpretation of Note 30.  Pl.'s Reply Br. at 4.  According to JBF Bahrain, "the text of the USBFTA and

13

the Side Letter are relevant legislative history demonstrating the intent

of the President and of Customs . . . ." *Id.* JBF Bahrain goes as far as

arguing that the Executive Agreement and the Side Letter "are the

source of this dispute." *Id.* JBF Bahrain's argument is not persuasive.

The Supreme Court has "long recognized the distinction between

treaties that automatically have effect as domestic law, and those that-

while they constitute international law commitments – do not by

themselves function as binding federal law." *Medellin v. Texas*, 552

U.S. 491, 504 (2008); *Sosa v. Alverez-Machain*, 542 U.S. 692, 734 (2004)

(A non-self-executing international agreement "does not itself create

obligations enforceable in federal courts."). When an international

agreement does not evince executory intentions, it is "non-self-

executing, and does not take force absent an implementing statute."

*Cardenas v. Stephens*, 820 F. 3d 197, 202 n. 5 (5th Cir. 2016).

Here, neither the Executive Agreement nor the Side Letter should

be used to interpret Note 30 because they are non-self-executing and

not enforceable under the United States law. Article III proscribes the

Court from considering the provisions of the Executive Agreement and

the Side Letter because "[i]nternational-law norms that have not been

14

incorporated into domestic U.S. law by the political branches are not judicially enforceable." *Al-Bihani v. Obama*, 619 F.3d 1, 9 (D.C. Cir. 2010). While both the Executive Agreement and the Side Letter carry significance between the United States and Bahrain, they do not give rise to obligations that this Court can enforce. *See generally Canadian Lumber Trade Alliance v. United States*, 30 Ct. Int'l Trade 391, 424-433 (2006) *aff'd in part and vacated in part,* 517 F.3d 1319 (Fed. Cir. 2006) (discussing when executive agreements give rise to judicially enforceable obligations in the context of free trade agreements).

JBF Bahrain argues that Congress "had full knowledge of the Side Letter" when it authorized the President to make proclamations and the "Officers of the Unites States Government to issue regulations implementing the USBFTA." Pl.'s Reply Br. at 19. JBF Bahrain further argues that those facts are "sufficient to demonstrate the intention of the President and USTR to supplement the Implementation Act with regulations directing CBP to use the Part 102 Rules in origin determinations." Pl.'s Reply Br. at 19. None of those materials lend any support to JBF Bahrain's argument, which is purely supposition.

15

Congress did not include the tariff shift rules contained in the Side Letter in the United States-Bahrain Free Trade Agreement Implementation Act (the Implementation Act), and the President incorporated Note 30 into the HTSUS without them.  The effect of those deliberate actions is that, for purposes of subdivision (b)(ii) of Note 30, the rules set forth in the Side Letter are not incorporated into law.  Accordingly, even though the Executive Agreement and Side Letter are included in the legislative history of the Implementation Act, they have no bearing on the proper construction of Note 30, because the construction of Note 30 is governed by the contents of the Implementation Act and the Presidential Proclamation.  Congress did not incorporate the Side Letter into the Implementation Act, *e.g., Alcan Aluminum Corp. v. United States*, 165 F.3d 898, 904 (Ct. Int'l Trade 1999), despite awareness of its existence.  Pl.'s Reply Br. at 19.  Nor did the President.  The Court should assume these omissions were intentional, not oversights.

**D.    CBP's Part 102 Regulations Should Not Be Used To Interpret General Note 30, HTSUS.**

Contrary to plaintiff's arguments, Pl.'s Reply Br. at 19, a regulation cannot alter or expand the meaning of a statute.  A

16

"regulation is supposed to serve, it cannot be used to interpret the statute." *WC Homes, LLC v. United States*, 2010 WL 3221845, at *4 (D. Md. Aug. 13, 2010). Certainly, a "regulation cannot change the statute." *Public Lands Council v. Babbitt,* 529 U.S. 728, 745 (2000); *U.S. v. Calamaro*, 354 U.S. 351, 358 (1957). But that is precisely the nature of JBF Bahrain's arguments. JBF Bahrain relies on a regulation to interpret and effectively rewrite Note 30. CBP's regulations cannot amend the Note, which is statutory text. Thus, to the extent that JBF Bahrain relies on the definition of the term "new and different article of commerce" in 19 C.F.R. §§ 10.809, 10.810 in a way that conflicts with the definition in subdivision (d)(iv)(D) of Note 30, JBF Bahrain's argument lacks merit. *WC Homes, LLC v. United States*, 2010 WL 3221845, at *3 (D. Md. Aug. 13, 2010).

### E. Legislative History Should Not Be Used To Interpret The Plain Meaning of General Note 30, HTSUS.

Courts look at legislative history "only to determine whether a clear intent contrary to the plain meaning exists." *See Sharp v. United States*, 580 F.3d 1234, 1239 (Fed. Cir. 2009); *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992); *United States v. Gonzales*, 520 U.S. 1, 6 (1997). To overcome the plain meaning of the statute, "the party

17

challenging it by reference to legislative history must establish that the legislative history embodies "an *extraordinary showing* of contrary intentions." *See Sharp*, 580 F.3d at 1234 (quoting *Garcia v. United States*, 469 U.S. 70, 75 (1984)).  Here, JBF Bahrain has failed to make the "extraordinary showing" of contrary intentions.

We have established that there is no aspect of subdivision (b)(ii) of Note 30 that is ambiguous.  The term "new or different article of commerce" is defined in subdivision (d)(iv)(D) and the term "substantially transformed" is defined in subdivision (d)(iv)(H).  Those definitions are unambiguous.  Accordingly, whatever relevance the Executive Agreement and the Side Letter once had, both Congress and the President have made clear that they have no role in the interpretation of Note 30.

JBF Bahrain attempts to invoke the cannon of construction *pari materia* in an attempt to rescue its flawed interpretation of Note 30. According to JBF Bahrain, "19 C.F.R. 10.809(i) when read in *pari materia* with GN 30 requires that the Part 102 Rules control whether a new or different article of commerce exists for GN 30(b)(ii)."  *See* Pl.'s

Reply Br. at 20.  JBF Bahrain's reliance on *pari materia* is not persuasive.

Under the canon of *pari materia,* courts should interpret statutes "with similar language that generally address the same subject matter together,'" "'as if they were one law.'" *Strategic Hous. Fin. Corp. of Travis Cnty. v. United States*, 608 F.3d 1317, 1330 (Fed. Cir. 2010) *(*quoting *Erlenbaugh v. United States,* 409 U.S. 239, 243 (1972) (quoting *United States v. Freeman,* 44 U.S. (3 How.) 556 (1845)).  However, the rule applies only when the statute to be construed is ambiguous.  *See Beverly Enters., Inc. v. Herman*, 119 F. Supp. 2d 1, 8 (D.D.C. 2000); *District of Columbia v. Gladding,* 263 F. 628, 629 (D.C. Cir. 1920); *Northern Pac. Ry. Co. v. United States,* 156 F.2d 346, 350 (7th Cir. 1946); 2B Sutherland, *Statutes and Statutory Construction* § 51.01 (Norman J. Singer ed., 5th ed. 1992).

Here, we have established that subdivision (b)(ii) is unambiguous and, therefore, *pari materia* is not applicable.  In any event, *pari materia* does not permit a regulation to be placed on equal footing with a statute.  They are not in parity and cannot be read together.  Note 30

19

must be interpreted based on its plain meaning without resort to any regulations.

## II.    SUBDIVISION (b)(ii) OF GENERAL NOTE 30, HTSUS, REQUIRES A DUAL SUBSTANTIAL TRANSFORMATION.

We have established that JBF Bahrain's statutory analysis of Note 30 is untenable.  Subdivision (b)(ii) of Note 30, HTSUS, requires a dual substantial transformation.  If an imported good is not wholly the growth, product or manufacture of Bahrain or the United States or both, subdivision (b)(ii) requires that the imported good be a "new or different article of commerce" **and** the satisfaction of a 35% value-content requirement before it qualifies as an originating good.  Those are two separate and distinct prerequisites.  To establish a "new or different article of commerce," the requirements of subdivision (d)(iv)(D) (defining "new or different article of commerce") and (d)(iv)(H) (defining "substantially transformed") must be met.  However, the 35% value-content requirement also requires a transformation as only materials of Bahraini-origin can be counted towards the 35% value content requirement.  It follows that non-originating materials must first be converted into a Bahraini material and that material is then used to

20

make the imported good, which is a new and different article of commerce distinct from its constituent materials.  In other words, the 35% value-content requirement mandates that non-originating materials be substantially transformed into Bahraini materials and then the Bahrani materials must be substantially transformed again before their inclusion into the 35% value-content calculation of the imported good.

The 35% value-content requirement in Note 30 ensures that the imported good contains sufficient Bahraini content.  A mere change in classification or tariff-shift of the non-originating material would be insufficient because it does not create a Bahraini "material" that can be counted towards the 35% value-content requirement.  *See* Gen. Note 30(b)(ii)(A), (35% value-content calculation includes "the value of each material produced in the territory of Bahrain or of the United States or both . . . ").

As noted above, the statute requires that inputs of non-Bahraini (or non-U.S.) origin be converted into Bahraini "materials," as that term is defined by General Note 30, and then used in the manufacture of a new or different article of commerce that is imported into the United

21

States, before those materials may be counted toward the 35% value-content requirement.  JBF Bahrain does not proffer any explanation of how non-Bahraini inputs can become Note 30 "materials" without a dual transformation.

JBF Bahrain argues that we did not acknowledge that the phrase "double substantial transformation" does not appear in Note 30, HTSUS.  JBF Bahrain is incorrect.  We addressed that point at page 26 of our primary brief.  As we previously explained, although the phrase "double substantial transformation" does not appear in General Note 30 or the Implementation Act, the dual requirement is clearly gleaned from the structure of the statute.  This is similar to the Generalized System of Preferences (GSP).  The term "double substantial transformation" does not appear in the statutory text of the GSP, and yet, the Federal Circuit has interpreted the GSP as requiring a dual transformation.  *Torrington Co. v. United States*, 596 F. Supp. 1085-86 (Ct. Int'l Trade 1984) ("Although not explicit, the dual requirement can be gleaned from the statute.")

JBF Bahrain further argues that the Government failed to explain why precedent concerning a different tariff program is "more probative

22

than the text of GN 30, the Implementing Regulations, and the Agreement including the Side Letter . . ." Pl.'s Reply Br. at 21. Again, JBF Bahrain is incorrect. We explained that the value-content requirement appears in several preferential treatment programs, including GSP. *See* 19 U.S.C. §§ 2461-2465. *See* Def.'s Br. at 22. The Federal Circuit has held that, for purposes of the GSP, the 35% value-content requirement is only satisfied when the non-originating input is first transformed into an originating material and then that originating material is used to manufacture or produce the imported good. *Torrington Co. v. United States*, 764 F.2d 1563 (Fed. Cir. 1985); *Meyer Corp., U.S. v. United States*, 43 F.4th 1325, 1331 (Fed. Cir. 2022).

In sum, subdivision (b)(ii) of Note 30 controls and is unambiguous. The plain language of the statute requires two substantial transformations.

## CONCLUSION

For these reasons and those set forth in our initial brief, we respectfully request that the Court grant the Government's cross-motion for partial summary judgment and deny plaintiff's motion for partial summary judgment.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

By:  /s/ Marcella Powell
     MARCELLA POWELL
Of Counsel:                            Senior Trial Counsel
Taylor R. Bates                        Civil Division, U.S. Dept. of Justice
Office of the                          Commercial Litigation Branch
Assistant Chief Counsel                26 Federal Plaza, Room 346
International Trade Litigation          New York, New York 10278
U.S. Customs and                       Tel. (212) 264-9230
Border Protection                      Attorneys for Defendant


Dated: March 20, 2026

24

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: HON. M. MILLER BAKER, JUDGE

| | |
|---|---|
| JBF BAHRAIN W.L.L., as successor-in-interest to JBF Bahrain S.P.C., | : |
| | : |
| | : |
| | : |
| Plaintiff, | : |
| | : Court No. 23-00067 |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |

**<u>CERTIFICATE OF COMPLIANCE</u>**

The brief complies with the 14,000 word limitation imposed by

Chambers Procedures.  The word count is 4,476.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

<u>/s/ Justin R. Miller</u>
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

25

                                    By:     /s/ Marcella Powell
                                            MARCELLA POWELL
Of Counsel:                                 Senior Trial Counsel
Taylor R. Bates                             Civil Division, U.S. Dept. of Justice
Office of the                               Commercial Litigation Branch
Assistant Chief Counsel                     26 Federal Plaza, Room 346
International Trade Litigation   New York, New York 10278
U.S. Customs and                            Tel. (212) 264-9230
Border Protection                           Attorneys for Defendant

Dated: March 20, 2026

                                    26